**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 8 1997**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

MICHAEL RHODES HUNT,

      Plaintiff - Appellant,

v.

CORPORAL STEPHENS, doctor
unknown; CORPORAL DOYLE,

      Defendants - Appellees.

No. 96-1140

(D. Colorado)

(D.C. No. 92-N-1967)

**ORDER AND JUDGMENT**[*]

Before **ANDERSON**, **HENRY** , and **BRISCOE**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. <u>See</u> Fed. R. App. P. 34 (a); 10th Cir. R. 34.1.9. This cause is therefore ordered submitted without oral argument.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Michael R. Hunt appeals the district court's adverse judgment following a bench trial on his 42 U.S.C. § 1983 action against certain officers of the Jefferson County Sheriff's Department. He contends that the district court erred in: 1) analyzing his treatment under the Eighth Amendment's prohibition against cruel and unusual punishment instead of the Fourteenth Amendment's Due Process Clause; and 2) applying the prison riot doctrine to justify his treatment. We affirm.

In September 1991, Hunt was tried before a jury and convicted on two felony and three misdemeanor counts. The court entered judgment and imposed sentence on November 1, 1991. In the interval between conviction and sentencing, while he was incarcerated in the Jefferson County Jail, Hunt was involved in a jail disturbance. While in lock-down, several inmates in Hunt's pod of cells flooded their cells, tampered with the electrical fixtures, kicked their cell doors (with enough force for the control center's security lights to flicker as if the doors were unsecured), and chanted loud enough to disturb the other jail modules. The district court found that Hunt was an active participant in the disturbance.[1] App. Vol. II, Tab 7 at 446.

When the disturbance had continued more than four hours, the guards worried that the unrest would spread. Initial responses, such as turning off the water to the cells, failed to quell the disturbance. Finally, after considering various options, the guards determined

_____

[1]Ignoring the district court's well-supported finding, Hunt baldly asserts that he was not involved.

to restrain the inmates with a four-point restraint using handcuffs and leg irons. Jail guards entered Hunt's cell around 12:45 a.m., handcuffed him behind the back and placed him in leg irons with the chain running through the handcuffs. Thereafter, the deputies checked the restraints every half hour. Hunt claims to have complained of severe and continuing pain which was exacerbated by a recent shoulder injury. However, he concedes that the guards loosened the restraint in response to his complaints. App. Vol. I, Tab 5 at 134. When all inmates finally calmed down, the restraints were removed. The removal was completed by 6:08 a.m, just over five hours after the restraints were first placed. Hunt alleges that he felt shoulder pain for a couple of days after the incident. Id. at 138.

On appeal, Hunt contends that the district court should not have analyzed his treatment under the Eighth Amendment. Rather, he argues that since he had not yet been sentenced, he was a pretrial detainee whose treatment should have been analyzed under the Fourteenth Amendment's Due Process Clause. Notably, however, he fails to articulate the precise Fourteenth Amendment standard which the district court should have applied.[2] In any event, even if Hunt were correct in his assertion that he was a

---

[2]For example, depending on the context, courts may consider whether the officials' conduct shocks the conscience, whether the officials acted with deliberate indifference, or whether the officials improperly imposed the restriction as punishment. See e.g., Block v. Rutherford, 468 U.S. 576, 583 (1984); United States v. Johnstone, 107 F.3d 200, 205 (3d Cir. 1997); Howard v. Dickerson, 34 F.3d 978, 980 (10th Cir. 1994).

pretrial detainee, his argument is unavailing. Whatever standard we use to judge Hunt's treatment, we conclude that his constitutional rights were not violated.

Hunt also contends that the guards should have released him as soon as the majority of inmates quieted, and should not have waited an additional two hours until all inmates calmed down. Hunt argues that the district court should not have viewed his treatment under the prison riot standard of <u>Whitley v. Albers</u>, 475 U.S. 312 (1986),[3] because in his case the individual inmates were separately locked in individual cells and, once restrained, posed no threat to security. Again, Hunt articulates no alternative standard, although he generally refers to cases which hold that once an inmate is subdued, additional force should not be used against him. We note, however, that the cases Hunt cites involve beatings after inmates are subdued and are readily distinguishable.

The district court found that the guards's decision to remove restraints only when all inmates were quieted was reasonable under the circumstances, even without giving any deference to their actions. We agree. Whatever standard we use, we conclude that Hunt's constitutional rights were not violated.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge

---

[3]Under <u>Whitley</u> we consider "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." <u>Id.</u> at 320-21 (quoting <u>Johnson v. Glick</u>, 481 F.2d 1028, 1033 (2d Cir. 1973).